UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: NOV 0 7 2014
```

------------------------------------------------------------------ X
                                                  :

JOSE CRESPO,                                    :
                                                :
                    Plaintiff,                  :
                                                :
             -v-                                :        13-cv-6934 (KBF)
                                                :
HARVARD CLEANING SERVICES,                      :        OPINION & ORDER
                                                :
                    Defendant.                  :
                                                :
------------------------------------------------------------------ X

KATHERINE B. FORREST, District Judge:

      Pro se plaintiff Jose Crespo ("Crespo") claims that defendant Harvard

Cleaning Services ("HCS") unlawfully discriminated against him when it chose not

to offer him a permanent employment position and then terminated him from the

temporary employment position he held at the company.  HCS has moved for

summary judgment against Crespo as to all claims not previously dismissed by this

Court.  Because Crespo has failed to allege facts sufficient to create a triable issue,

the Court GRANTS HCS's motions for summary judgment.

I.    FACTUAL HISTORY[1]

HCS is a New York corporation engaged in the cleaning and maintenance of commercial buildings. (SOF ¶ 1.) Crespo is a former employee of HCS, and is both black and Hispanic. (SOF ¶¶ 2, 33.) He is of Puerto Rican origin. (1st Crespo Aff. at 28.[2])

HCS hires "vacation replacement workers" to temporarily fill vacancies when its permanent building service employees take vacations or are absent for other

---

[1] Crespo has chosen not to provide a Local Rule 56.1 statement or a memorandum of law in opposition to defendant's motions for summary judgment. Instead, Crespo has filed two "affirmations in opposition." The first affirmation in opposition consists of a short three-page-long statement by Crespo accompanied by over 100 pages of documents he believes to be relevant, including the transcript of his June 16, 2014 deposition. (See ECF No. 33 ("1st Crespo Aff.").) The second affirmation in opposition is a handwritten two-page-long statement. (See ECF No. 48 ("2d Crespo Aff.").) Mindful of the need to liberally construe the materials submitted by a non-moving pro se plaintiff to "raise the strongest arguments they suggest," Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)), this Court will construe the affirmative factual assertions in Crespo's affirmations (which include some of the statements made by Crespo during his deposition) and their attachments as if they were contained in Local Rule 56.1 statement.

Accordingly, the following facts are taken from the initial Local Rule 56.1 statement submitted by HCS in connection with the first motion for summary judgment (ECF No. 30 ("SOF")) and its supporting affidavit (ECF No. 32), and, to the extent described above, Crespo's affirmations. HCS also submitted a Local Rule 56.1 statement in connection with its motion for summary judgment as to Crespo's national-origin discrimination claim, which is identical to HCS's initial Local Rule 56.1 statement except for the addition of the phrase "of Puerto Rican provenance" to the first sentence of paragraph 40. (ECF No. 44.) This phrase is not supported by the citation provided, and accordingly, the Court disregards it and will cite only to HCS's initial Local Rule 56.1 statement.

The Court cites to the parties' factual submissions only when they support a factual proposition, cite relevant material, and are not contradicted in pertinent part by a counter-statement supported by citation to evidence that would be admissible. See Local Civil Rule 56.1(d); Chimarev v. TD Waterhouse Investor Servs., Inc., 280 F. Supp. 2d 208, 223 (S.D.N.Y. 2003) (material facts set forth in a Rule 56.1 statement "are uncontested and may be accepted as true" where a Rule 56.1 counter-statement was "deficient" because it consisted solely of "blanket denials" and was "not supported by citation to any evidence"), aff'd, 99 Fed. App'x 259 (2d Cir. 2004). The Court generally recites only those facts relevant to its decision, but also includes some factual allegations that are not material to the claims asserted but that are important to understanding the context for this case.

[2] Citations to Crespo's first affirmation and its exhibits are paginated by reference to the ECF page number located in the upper right-hand corner of the document, which does not necessarily correlate with the page number located on the document itself. For example, a citation to page 4 of the transcript of the June 16, 2014 deposition of Crespo would be "1st Crespo Aff. at 14," and a citation to page 42 of that transcript would be "1st Crespo Aff. ex. 1 at 3."

reasons. (SOF ¶ 7.) HCS considers its vacation replacement workers to be temporary employees. (SOF ¶ 8.) On or about August 12, 2011, Crespo was first hired by HCS, and he was hired as a vacation replacement worker. (SOF ¶¶ 2, 6.) He worked in this position for approximately five months, and was then laid off. (SOF ¶ 9.)

On or about March 29, 2012, Crespo was again hired by HCS as a vacation replacement worker, and was assigned to work at the building located at 270 Park Avenue, New York, New York ("270 Park Avenue"), which is the corporate headquarters of JPMorgan Chase & Co. ("JPMorgan"). (SOF ¶¶ 10-11, 13.) At this time, Crespo informed HCS that he was interested in a permanent position. (1st Crespo Aff. at 8 & ex. 1 at 63.) James Brady ("Brady") was the Project Manager at 270 Park Avenue while Crespo worked there. (Affidavit of James Brady ¶ 1, ECF No. 35 ("Brady Aff.").) Crespo asserts that the two top managers at 270 Park Avenue were Brady and an individual named "Bill." (See 1st Crespo Aff. at 1, 39; 2d Crespo Aff. at 2.)

All individuals who regularly work at 270 Park Avenue must pass a federally mandated background check, and the Federal Deposit Insurance Corporation closely monitors this requirement for strict compliance. (SOF ¶¶ 14-15.) When an HCS employee undergoes such a background check, HCS is informed if the individual passes or fails, but is not given detailed results. (SOF ¶ 15.) Permanent employees always undergo the background check, but vacation replacement workers often do not. (SOF ¶¶ 16, 19.) While he was employed as a vacation replacement

worker at 270 Park Avenue, Crespo did not undergo a background check.  (SOF ¶ 16.)

The building service workers employed by HCS at 270 Park Avenue are represented for collective bargaining purposes by Service Employees International Union Local 32BJ (the "Union"), which has negotiated a collective bargaining agreement on their behalf.  (SOF ¶ 12.)  The collective bargaining agreement requires that temporary employees at a building receive first consideration for permanent employment positions that open up at the building.  (SOF ¶ 17.)  Sometime between October 2012 and February 2013, a permanent cleaner position at 270 Park Avenue became available.  (SOF ¶ 18; 2d Crespo Aff. at 2.)  Crespo expressed his interest, and was ultimately the successful bidder in the collectively bargained job-selection process.  (SOF ¶ 19.)

HCS then submitted Crespo's name to JPMorgan for approval.  (SOF ¶ 21.)  The Pre-employment Screening Department of JPMorgan's Global Corporate Security & Investigations informed HCS that Crespo failed the required background check.  (SOF ¶ 22.)  It is unclear whether the results of the background check pertained to Crespo or another individual with a similar name.  (See 1st Crespo Aff. at 2-7.)  However, it is undisputed that Crespo was convicted of a drug possession offense in 1989, for which he served four years in prison.  (1st Crespo Aff. at 28.)  Regardless, JPMorgan demanded Crespo's removal from 270 Park Avenue based upon the results of his background check.  (SOF ¶ 36.)

Under the collective bargaining agreement, a permanent employee who cannot work in one building will be transferred to another building based upon the employee's seniority within HCS. (SOF ¶ 26.) Temporary employees, however, do not have seniority rights. (SOF ¶ 27.) As Crespo had never been anything more than a temporary employee of HCS, he had no seniority rights, and as a result was not entitled to be transferred to another building serviced by HCS. (See SOF ¶¶ 28-29.)

HCS terminated Crespo's employment on or about March 18, 2013. (SOF ¶ 29.) The decision to terminate Crespo was made by HCS's Vice President of Operations, Murat Mela ("Mela"). (Brady Aff. ¶ 20.) Peter Ortiz, who was the Day Operations Manager at 270 Park Avenue at the time (SOF ¶ 40), gave Crespo the message that he was laid off, while Ortiz was on the phone with Brady (1st Crespo Aff. at 41-42).

Crespo alleges that while working at 270 Park Avenue, his supervisor and foreman regularly made derogatory remarks to him about his being Puerto Rican (see 1st Crespo Aff. at 33, 45 & ex. 1 at 10; 2d Crespo Aff. at 2), and that they harassed him, another worker who was Hispanic, and another worker who was black. (See 1st Crespo Aff. ex. 1 at 2-4.) Crespo alleges that he complained about these comments to Brady and Bill, who ignored the complaints. (1st Crespo Aff. at 56; 2d Crespo Aff. at 2.)

Crespo was the only Puerto Rican working at 270 Park Avenue at night; the other workers were mostly Guatemalan, Dominican, and Ecuadorian. (1st Crespo

5

Aff. ex. 1 at 1, 11-12.) According to the most recent available survey, of HCS's total staff of 79 workers at 270 Park Avenue, 42 are Hispanic and 5 are black. (SOF ¶ 38.) HCS's day operations manager and the supervisor of the night cleaning staff at 270 Park Avenue during all times relevant to this complaint were both Hispanic. (SOF ¶ 40.) HCS has also involuntarily removed four non-Hispanic or white employees from 270 Park Avenue. (SOF ¶ 41.) The vacancy created by Crespo's departure was filled by a non-white Hispanic. (SOF ¶ 42.)

Crespo filed a grievance with the Union protesting his layoff (SOF ¶ 30; Crespo. Aff. ex. 2 at 1) as well as allegedly racist and discriminatory comments made by his supervisor and foreman, who were of Albanian ancestry, (1st Crespo Aff. at 45-46 & ex. 1 at 2). The Union declined to proceed with the grievance. (SOF ¶¶ 30-31.) Crespo also filed a charge against HCS with the New York State Division of Human Rights ("NYSDHR") alleging race and color discrimination. (SOF ¶ 33.) HCS filed an answer denying the allegations. (SOF ¶ 34.) Following an investigation, NYSDHR determined there was no probable cause to believe HCS had terminated Crespo for a discriminatory reason. (SOF ¶ 35.)

Crespo sent a handwritten "complaint" against HCS to the U.S. Equal Employment Opportunity Commission ("EEOC") alleging race discrimination, which was received by the EEOC on June 25, 2013. (1st Crespo Aff. ex. 1 at 28, ex. 2 at 2.) Crespo's EEOC "complaint" alleged that his supervisor and two foremen harassed him using racial slurs, and states that he was arrested 25 years prior to the background check. (1st Crespo Aff. ex. 2 at 2.)

6

## II. PROCEDURAL HISTORY

Crespo filed this employment discrimination action on September 30, 2013. (ECF No. 2 ("Compl.").) The complaint alleges that HCS terminated him, failed to promote him, and failed to accommodate his disability on account of his race, gender/sex, national origin, age, and disability, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as codified, 42 U.S.C. §§ 2000e et seq.; the Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621-34; and the Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112-17. (See Compl.) HCS filed an answer on December 30, 2013. (ECF No. 8.)

The Court held an initial pre-trial conference on January 31, 2014, at which the Court established a schedule to govern the rest of the case. (ECF Nos. 11-12.) That schedule was later amended to set the deadline for dispositive motions as July 28, 2014, with opposition briefs due August 28, 2014, and reply briefs due September 9, 2014. (ECF No. 24.)

In a letter motion dated February 5, 2014, HCS moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) as to Crespo's age and disability discrimination claims because they were not raised before either the NYSDHR or the EEOC. (ECF No. 14.) The Court granted HCS's Rule 12(c) motion on March 19, 2014. (ECF No. 20.)

HCS made a timely motion for summary judgment as to Crespo's claims of race/color discrimination on July 28, 2014, and served that motion, its accompanying papers, and the special notice to pro se litigants required by Local

7

Rule 56.2 on Crespo via overnight mail. (ECF Nos. 27-32.) HCS argues that Crespo cannot make out a prima facie case; that he cannot demonstrate that he was qualified to hold his position; and that he cannot demonstrate that his discharge took place under circumstances giving rise to an inference of discrimination. (ECF No. 28.) Crespo filed an affirmation in opposition on August 8, 2014.[3] (ECF No. 33.) HCS filed a reply brief accompanied by an affidavit setting forth additional factual allegations on September 9, 2014, and served it on Crespo via certified mail.[4] (ECF Nos. 35-37, 39.)

On October 14, 2014, the Court issued an order to give HCS a final opportunity to move for summary judgment as to Crespo's national-origin discrimination claim, and to give Crespo an opportunity to respond to factual allegations made by HCS outside of its Local Rule 56.1 statement. (ECF No. 41.) Two days later, on October 16, 2014, HCS moved for summary judgment as to Crespo's national-origin discrimination claim, and served that motion, its accompanying papers, and the special notice to pro se litigants required by Local Rule 56.2 on Crespo via overnight mail. (ECF Nos. 42-47.) Crespo submitted an affirmation in opposition on October 27, 2014. (ECF No. 48.) HCS filed a reply on November 4, 2014 and served it on Crespo via certified mail. (ECF Nos. 49, 50.)

---

[3] This affirmation in opposition requests that the Court order HCS to provide Crespo with "detailed results of the background check," as well as emails or a report. (1st Crespo Aff. at 1.) The Court explained the discovery process to Crespo at the initial pre-trial conference on January 31, 2014. (See ECF Nos. 9, 15.) Discovery in this matter closed on July 18, 2014. (ECF No. 24.) The Court cannot grant such a request at this stage of the litigation.

[4] Because of a docketing error, HCS refiled its reply memorandum of law on September 11, 2014. (See ECF Nos. 36, 39.)

8

III.  LEGAL STANDARDS

A.  Summary Judgment

Summary judgment may not be granted unless the movant shows, based on admissible evidence in the record placed before the court, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party does not bear the ultimate burden on a particular claim or issue, it need only make a showing that the non-moving party lacks evidence from which a reasonable jury could find in the non-moving party's favor at trial. Id. at 322-23. In making a determination on summary judgment, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).

Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must set out specific facts showing a genuine issue of material fact for trial. Price v. Cushman & Wakefield, Inc., 808 F. Supp. 2d 670, 685 (S.D.N.Y. 2011); see also Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159,

9

166 (2d Cir. 2010) (citations omitted); see also Price, 808 F. Supp. 2d at 685 ("In seeking to show that there is a genuine issue of material fact for trial, the non-moving party cannot rely on mere allegations, denials, conjectures or conclusory statements, but must present affirmative and specific evidence showing that there is a genuine issue for trial.").

Only disputes relating to material facts—that is, "facts that might affect the outcome of the suit under the governing law"—will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The Court should not accept evidence presented by the nonmoving party that is so "blatantly contradicted by the record . . . that no reasonable jury could believe it." Scott v. Harris, 550 U.S. 372, 380 (2007). If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).

In reviewing a motion for summary judgment involving a non-moving pro se plaintiff, the Court liberally construes the pleadings and briefs submitted by the plaintiff, "reading such submissions 'to raise the strongest arguments they suggest.'" Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). Nevertheless, a pro se plaintiff may

10

not simply rely on his or her complaint to defeat the motion—they must submit evidence of their own. See Champion v. Artuz, 76 F.3d 483, 485-86 (2d Cir. 1996).

Summary judgment may be "appropriate even in the fact-intensive context of discrimination cases." Abdu-Brisson v. Delta Air Lines, 239 F.3d 456, 466 (2d Cir. 2001). The Court must decide whether a plaintiff can satisfy his or her "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against" him or her. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000) (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).

    B.    Unlawful Discrimination Under Title VII

Title VII prohibits employers from making employment-related decisions in a discriminatory fashion "based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). Discrimination claims under New York state law are analyzed under the same legal standards as Title VII claims. Weinstock v. Columbia Univ., 224 F.3d 33, 42 n.1 (2d Cir. 2000).

In situations in which there is no direct evidence of discrimination, Title VII discrimination claims use the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Abrams v. Dep't of Pub. Safety, 764 F.3d 244, 251 (2d Cir. 2014) (citing McDonnell, 411 U.S. at 802-04). Plaintiff bears the initial burden of establishing a prima facie discrimination claim by showing "(1) that he belonged to a protected class; (2) that he was qualified for the position he sought; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of

discriminatory intent." Abrams, 764 F.3d at 251-52. To survive a motion for summary judgment at the prima facie stage, a plaintiff need only make a de minimis showing. Tomkins v. Seiler, 66 F.3d 1295, 1308 (2d Cir. 1995).

If plaintiff meets his or her burden to establish a prima facie case, the burden shifts to defendant to provide "a legitimate non-discriminatory reason for its actions." Abrams, 764 F.3d at 251. If the defendant meets its burden, plaintiff must prove the legitimate non-discriminatory rationale provided by defendant is a mere pretext for prohibited discrimination. Hold, 95 F.3d at 129.

IV.   DISCUSSION

Crespo's complaint asserts claims based on discrimination on account of his race, gender/sex, national origin, age, and disability.[5] (See Compl.) His age and disability claims have already been dismissed. (ECF No. 14.) Additionally, nowhere in Crespo's complaint or in the papers he has submitted in opposition to this motion for summary judgment has Crespo alleged any facts sufficient to create a triable issue with regard to discrimination on account of his gender/sex. Accordingly, the Court DISMISSES Crespo's Title VII gender/sex discrimination claim.

It is also clear that to the extent that Crespo claims that HCS discriminated against him by failing to "promote" him, what Crespo really means is that HCS discriminated against him by failing to offer him a permanent position. Accordingly, the key questions the Court must answer here concern whether there are disputed issues of material fact precluding this Court from awarding summary

---

[5] In his affirmation in opposition to HCS's motion for summary judgment as to his national-origin discrimination claim, Crespo for the first time asserted a claim for unpaid overtime hours. (See ECF No. 48.) Because no such claim is set forth in the complaint, the Court disregards it.

judgment for HCS with regard to whether HCS unlawfully discriminated against

Crespo on the basis of his race/color (black and Hispanic) or national origin[6] (Puerto

Rican) in (1) failing to offer him a permanent position and (2) terminating him from

his temporary position.

A.    Crespo has established a prima facie case only as to his claim of
      national-origin discrimination in the decision to terminate him from
      his temporary position.

To establish a prima facie Title VII discrimination claim in the absence of

direct evidence of discrimination, plaintiff must show "(1) that he belonged to a

protected class; (2) that he was qualified for the position he sought; (3) that he

suffered an adverse employment action; and (4) that the adverse employment action

occurred under circumstances giving rise to an inference of discriminatory intent."

Abrams, 764 F.3d at 251-52.

As a Puerto Rican, Crespo is a member of a protected class. See, e.g., Rivera

v. Rochester Genesee Reg'l Transp. Auth., 743 F.3d 11, 15-16 & n.3, 23 (2d Cir.

2012) (concluding that district court erred in granting summary judgment for

defendant on Title VII hostile work environment claim based on Puerto Rican

---

[6] Crespo did not expressly complain about national-origin discrimination to the EEOC or NYSDHR.
As a general matter, "[b]efore an individual may bring a Title VII suit in federal court, the claims
forming the basis of such a suit must first be presented in a complaint to the EEOC or the equivalent
state agency." Williams v. N.Y.C. Hous. Auth., 458 F.3d 67, 69 (2d Cir. 2006) (citing 42 U.S.C. §
2000e-5). However, claims not expressly asserted before the EEOC or the equivalent state agency
may nevertheless be pursued in federal court if they are "reasonably related" to those presented to
the agency. Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 177 (2d Cir. 2005) (citing Legnani v.
Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001)). A claim is "reasonably
related" if the conduct complained of would fall within the scope of the agency investigation that
could reasonably be expected to grow out of the charge. Terry v. Ashcroft, 336 F.3d 128, 151 (2d Cir.
2003) (citing Butts v. City of N.Y. Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1402-03 (2d Cir.
1993)). It is reasonable to expect that Crespo's allegations regarding derogatory comments about his
national origin would be encompassed by any agency investigation of his charges of race or color
discrimination. Accordingly, this Court may properly consider Crespo's claim of national-origin
discrimination even if it was not expressly presented to the EEOC or NYSDHR.

national origin); de la Cruz v. N.Y.C. Human Resources Admin. Dep't of Soc. Servs.,
82 F.3d 16, 20 (2d Cir. 1996) (Title VII plaintiff who brought action for national
origin discrimination was a member of a protected class because he was Puerto
Rican); Valentin v. N.Y. State Dep't of Taxation & Fin., 992 F. Supp. 536, 537-40
(E.D.N.Y. 1997), aff'd, 175 F.3d 1009 (2d Cir. 1999) (addressing Title VII claim by
plaintiff with Puerto Rican national origin); cf., e.g., Lopez v. S.B. Thomas, Inc., 831
F.2d 1184, 1188 (2d Cir. 1987) (protections of § 1981 extended to employee of Puerto
Rican descent who alleged that employer discriminated against him on ground of
national origin).  Further, it is undisputed that Crespo suffered two adverse
employment actions: denial of a permanent position at 270 Park Avenue, and
termination from his position as a vacation replacement worker.  Accordingly, in
determining whether Crespo has made out a prima facie case, this Court need only
resolve whether he was qualified for the positions at issue and whether the adverse
employment actions occurred under circumstances giving rise to an inference of
discriminatory intent.

      1.    Qualifications.

The parties do not dispute that Crespo was generally qualified to serve as a
vacation replacement worker with HCS.  But whether Crespo was qualified for a
permanent position at 270 Park Avenue is a different story.

A plaintiff complaining that they were denied a position he sought need only
demonstrate that he "possesses the basic skills necessary for performance of [the]
job." Sista v. CDC Ixis N. Am., 445 F.3d 161, 171 (2d Cir. 2006) (quoting Owens v.
N.Y.C. Housing Auth., 934 F.2d 405, 409 (2d Cir. 1991)).  The employer's

qualifications may not serve as a pretext to mask unlawful discrimination. See Byrnie v. Town of Cromwell Bd. of Educ., 243 F.3d 93, 103 (2d Cir. 2001). The passage of a background check is a potentially legitimate qualification. See, e.g., Johnson v. Pub. Servs. Enter. Grp., 529 Fed. App'x 188, 191 (3d Cir. 2013) (passage of background check relevant to determining whether plaintiff was qualified for job); Strong v. Orkand Corp., 83 Fed. App'x 751, 753 (6th Cir. 2003) ("The denial of [plaintiff]'s security clearance rendered him unqualified for the job."); United States v. City of New York, 681 F. Supp. 2d 274, 287 (E.D.N.Y. 2010) (qualifications for job included "physical, medical, and psychological fitness tests, as well as background checks and basic language proficiency").

It is undisputed both that HCS's permanent employees who worked at 270 Park Avenue were required to pass a federally mandated background check (SOF ¶ 14) and that JPMorgan's Global Security & Investigations, Pre-employment Screening Department determined that Crespo failed the background check (SOF ¶ 22). Crespo therefore lacked the necessary qualifications for working in a permanent position at 270 Park Avenue.

Crespo alleges that JPMorgan made an error in conducting the background check. (See 1st Crespo Aff. at 2-7.) But whether JPMorgan made an error in conducting the background check is immaterial. First, such an error would have been committed by JPMorgan, not by HCS, and thus would have no bearing on whether HCS discriminated against Crespo unless HCS had knowledge of the error—and Crespo does not allege that HCS did. Second, even if HCS had made a

good-faith mistake in the course of evaluating Crespo's job qualifications, this would undercut rather than support Crespo's claim that HCS discriminated against him, for it suggests a legitimate non-discriminatory reason for not offering Crespo the permanent position. See Brown v. N.Y.C. Dep't of Educ., 513 Fed. App'x 89, 91-92 (2d Cir. 2013) (summary order) (affirming summary judgment against Title VII plaintiff who argued that employer erred in concluding she was ineligible for visa required for position because "the record is devoid of evidence indicating that that reason was a pretext for discrimination rather than simply a good faith mistake"). Further, Crespo has offered no evidence suggesting that the background check is a pretext for unlawful discrimination.

Accordingly, because Crespo was not qualified for the permanent position he sought at 270 Park Avenue, his claim that HCS unlawfully discriminated against him on the basis of his race, color or national origin in failing to offer him a permanent position is DISMISSED.

      2.    <u>Circumstance giving rise to inference of discriminatory intent.</u>

To establish "that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent," <u>Abrams</u>, 764 F.3d at 251-52, plaintiff may show that he or she was treated less favorably than a similarly situated employee outside his protected group, <u>Ruiz v. Cnty. of Rockland</u>, 609 F.3d 486, 493 (2d Cir. 2010).

The undisputed evidence precludes the Court from drawing any inference that HCS treated non-black or non-Hispanic employees more favorably either when deciding which employees to terminate or when offering permanent positions at 270

16

Park Avenue.  With regard to Crespo's termination, Crespo has failed to adequately allege any preferential treatment of non-Hispanics or non-blacks in HCS's termination decisions, and all of the undisputed evidence points in the opposite direction.  HCS has involuntarily removed four non-Hispanic or white employees from 270 Park Avenue, and the vacancy created by Crespo's departure was filled by a non-white Hispanic.  (SOF ¶¶ 41-42.)  Further, according to the most recent available EEO survey, a majority of HCS's staff at 270 Park Avenue are Hispanic or black, and HCS's day operations manager and night cleaning staff supervisor at 270 Park Avenue during the time Crespo worked there were Hispanic.  (SOF ¶¶ 38, 40.)

Taken together, these facts do not create a triable issue as to the preferential treatment of non-Hispanics or non-whites with regard to HCS's termination decisions or the offering of permanent positions at 270 Park Avenue.  There are no triable issues of fact precluding this Court from concluding that Crespo cannot make out a prima facie case for race or color discrimination against HCS because he cannot establish that the adverse employment actions at issue occurred under circumstances giving rise to an inference of discriminatory intent.

In addition to his race or color discrimination claim, Crespo also argues that he was singled out for termination because he was Puerto Rican.  (1st Crespo Aff. ex. 1 at 1-2.)  Crespo cites as support for this argument (1) his treatment by supervisors who he does not allege were involved in his termination decision, and (2) the fact that he was the only Puerto Rican working at 270 Park Avenue at night at the time he was terminated.  (See 1st Crespo Aff. ex. 1 at 1-4, 11-12.)

With regard to the former, comments regarding members of a protected class may assist in establishing an inference of discrimination, but not all such comments are "equally probative," and "[t]he more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination." Tomassi v. Insignia Fin. Grp., Inc., 478 F.3d 111, 115 (2d Cir. 2007). For example, "remarks made by someone other than the person who made the decision adversely affecting the plaintiff may have little tendency to show that the decision-maker was motivated by the discriminatory sentiment expressed in the remark." Id. Crespo has not alleged that any of the individuals who allegedly made discriminatory comments to him or about him were involved in any of the employment decisions at issue— the comments were made by Crespo's supervisor and foreman, but the decision to lay him off was made by Mela and relayed to him by Ortiz. Crespo also does not allege that the remarks were made in relation to the employment decisions at issue, nor does he allege that they were made in a context related to the decision-making process.

Nevertheless, the fact that Crespo was subject to derogatory comments due to his Puerto Rican national origin combined with the fact that he was the only Puerto Rican working at 270 Park Avenue at night when he was terminated together suffice to establish the de minimis showing required to make out a prima facie case.

B.   <u>Summary Judgment for HCS Must Be Granted Because There Is No Triable Dispute as to Whether HCS's Reason for Terminating Crespo Was Discriminatory</u>

As Crespo has met his burden of establishing a prima facie case for national-origin discrimination with respect to this termination, the burden shifts to HCS to provide "a legitimate non-discriminatory reason for its actions." <u>Abrams</u>, 764 F.3d at 251. There is no triable issue preventing this Court from concluding that HCS has done so. HCS terminated Crespo because JPMorgan demanded that he be removed from 270 Park Avenue and because he lacked seniority rights under the collective bargaining agreement that would entitle him to be transferred to another building serviced by HCS. (<u>See</u> SOF ¶¶ 28-29, 36.)

Accordingly, the burden shifts back to Crespo to prove the legitimate non-discriminatory rationale provided by HCS is a mere pretext for prohibited discrimination. He has failed to do so. Crespo does not make any allegations or provide any supportive facts regarding whether Mela, the individual who made the decision to terminate him, ever made discriminatory comments or acted in a discriminatory manner, nor does he allege that the individuals who made discriminatory comments were involved in the decision whether to terminate his employment. Crespo has alleged that Brady ignored his complaints about the comments, and that Brady was on the phone with Ortiz when Ortiz gave Crespo the message that he was laid off. But Crespo has not alleged that Brady actually participated in the decision to terminate him, nor do the materials before the Court suggest such an inference.

Accordingly, plaintiff's national-origin discrimination claim is DISMISSED.

V.    CONCLUSION

For the reasons set forth above, the Court grants defendant's motion for summary judgment.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Opinion and Order would not be taken in good faith and therefore denies in forma pauperis status for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to close the motions at ECF Nos. 27 and 42 and to terminate this action.

SO ORDERED.

Dated:       New York, New York
             November ⊥, 2014

                                    _____
                                    KATHERINE B. FORREST
                                    United States District Judge

Copy to:

Jose Crespo
1965 Lafayette Ave
#12-S
Bronx, NY 10473